IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

LINDA MICHELLE NEAL,       *
                           *
        Plaintiff,         *
                           *
    v.                     *    CV 113-076
                           *
THOMSON PLASTICS, INC.,    *
                           *
        Defendant.         *
                           *

**O R D E R**

Presently pending before the Court is Defendant Thomson Plastics, Inc.'s ("Thomson") Motion for Summary Judgment. (Doc. 23.) In this action, Plaintiff Linda Michelle Neal, proceeding *pro se*, alleges that during her one-month tenure as a temporary employee at Thomson Plastics a supervisor sexually harassed her, and the company immediately terminated her for reporting that harassment. Ms. Neal has since failed to respond to Defendant's summary judgment motion even after this Court issued an Order allowing her additional time to respond.[1] Defendants' motion, therefore, is deemed unopposed. LR 7.5, SDGa. ("Failure to respond within the applicable time period shall indicate that there is no

---

[1] The Clerk gave Ms. Neal appropriate notice of the motion for summary judgment on August 22, 2014 and at that time informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 24.) Thus, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), were satisfied. Ms. Neal's initial response was due September 15, 2014. (<u>Id.</u>) The Court's September 18, 2014 Order extended her deadline until October 2, 2014. (Doc. 25.)

opposition to a motion."). All material facts set forth in Defendant's Statement of the Material Facts ("DSMF") are deemed admitted for the purpose of this motion because Ms. Neal has not controverted them by filing her own statement of facts or any other materials in opposition. LR 56.1, SDGa. ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.").

Upon due consideration, the Court hereby **GRANTS** Defendant Thomson Plastic's Motion for Summary Judgment. (Doc. 23.)

## I. BACKGROUND

Thomson employed Ms. Neal for approximately ten months - from October 15, 2010 until August 7, 2011 - before she was laid off. (DSMF, Doc. 23-1, ¶ 3.) Ms. Neal asserts that during her 2010-11 tenure with Thomson, Stanley Brown, a supervisor at the company, would ask to take her out to eat, try to rub against her, make inappropriate sexualized comments, and attempt to get her telephone number. (Id. ¶ 5; Compl., Doc. 1, at 5.) At no point, however, did Ms. Neal alert Thomson to Mr. Brown's alleged misconduct during this employment period despite knowing she could complain to management or the human resources department. (DSMF ¶¶ 6-9.)

Ms. Neal returned to Thomson on February 24, 2012 as a temporary worker ("temp") through an assignment with Peoplelink Staffing Solutions ("Peoplelink"). (Id. 10; Compl. at 6.) She accepted the assignment because she enjoyed working at Thomson

2

during 2010-11. (DSMF ¶ 12.) As a temp, Thomson assigned Ms. Neal to the second shift as a Machine Operator. (Id. ¶ 14.) In particular, on March 27, 2012, Brenda Newsome, one of the two Shift Supervisors, assigned Ms. Neal to work in the Rework area of the plant. (Id. ¶ 15; Compl. at 6.) Mr. Brown, the other Shift Supervisor on duty, then requested that Ms. Neal help two machine operators at Press 137 who were behind. (DSMF ¶ 16.) After collecting the necessary tools, Ms. Neal informed Mr. Brown that she did not have the requisite training to assist at Press 137 and insisted that she was supposed to be assigned to Rework. (DSMF ¶ 17.) Mr. Brown attempted to explain to Ms. Neal the job he needed her to do at Press 137, but according to two witnesses, Ms. Neal became upset, raised her voice, and shouted profanity. (Id. ¶¶ 18, 21.) Mr. Brown then asked Ms. Neal to leave the press area, and he immediately requested that Ms. Newsome send Ms. Neal home until he could speak to human resources. (¶¶ 19, 20.) Ms. Newsome also overheard the "outburst" and elected to send Ms. Neal home after explaining to her that if she could not do what was asked, she would not be needed. (¶ 22.) In defense, Ms. Neal reported to Ms. Newsome that Mr. Brown was "mad" and "cussing" at her because she "wouldn't fool around with him." (Compl. at 5.)

On the following day, Thomson's Human Resources Manager, Larry Collins, investigated the incident by interviewing the three witnesses — Shirley Gibson, Erica Sims, and Ms. Newsome — as well as Mr. Brown. (DSMF ¶¶ 23, 24.) Each was required to supply a written statement. (Id. ¶ 24.) Mr. Collins also spoke with Ms.

3

Neal directly, and at this point she complained that "Stanley just mad because I wouldn't give him no attention, no play." (Id. ¶ 29.) Following up on Ms. Neal's claims as to Mr. Brown's inappropriate behavior, Mr. Collins found nothing to substantiate them. (Id. ¶ 33.) Thereafter, Mr. Collins notified Peoplelink Staffing Solutions that Thomson did not want Ms. Neal to return and requested that she not receive assignments in the future with Thomson because of the March 27 incident whereby she yelled at a supervisor and used profanity on the production floor in violation of Thomson's Standards of Conduct. (Id. ¶¶ 34, 35.) The Staffing Specialist at Peoplelink later confirmed that Ms. Neal had not made any complaints about sexual or other harassment until Peoplelink informed her that Thomson declined to have her back under any circumstances. (Id. ¶ 37.) As set forth in Thomson's Statement of Material Facts, the "decision to ask Peoplelink Solutions not to assign Ms. Neal to work assignments at Thomson Plastics was based entirely on her inappropriate outburst and use of profanity when asked by one of her supervisors to assist in a different area." (Id. ¶ 36.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

4

any material fact and that the moving party is entitled to summary judgment as a matter of law." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259, 1260 (11th Cir. 2004); FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted). "[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record before the court] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating that there is indeed a genuine issue as to the material facts of its case. Clark v. Coats & Clark, Inc. ("Clark I"), 929 F.2d 604, 608 (11th Cir. 1991). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Matsushita, 475 U.S. at 587. The Court must also avoid weighing

5

conflicting evidence. Anderson, 477 U.S. at 255; McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); Pepper v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989).

Additionally, despite the liberality with which courts are obliged to interpret *pro se* complaints, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). As the requirements of Griffith v. Wainwright were satisfied, see, supra, n.1, and Ms. Neal's time for filing materials in opposition has expired, Thomson's motion is ripe for consideration.

### III. DISCUSSION

Federal Rule of Civil Procedure 56(e)(3) provides that if a party "fails to properly address another party's assertion of fact . . . , the court may grant summary judgment *if the motion and supporting materials . . . show that the movant is entitled to it*" (emphasis added). Thus, the Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed,

6

but, rather, must consider the merits of the motion." Howard v. Gee, 538 F. App'x 884, 891 (11th Cir. 2013) (internal quotation marks omitted). The Court thus addresses the merits of Thomson's motion in the context of Ms. Neal's two claims, sexual harassment and retaliation.

### A. Ms. Neal's Hostile Work Environment/Sexual Harassment Claim

Under Title VII, to establish a prima facie case of sexual harassment through the creation of a hostile work environment, the employee must demonstrate: "(1) that she belongs to a protected group, (2) that she was subject to unwelcome sexual harassment, (3) that the harassment was based on her sex, (4) that the 'harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment,' and (5) 'a basis for holding the employer liable.'" Kurtts v. Chiropractic Strategies Grp., Inc., 481 F. App'x 462, 465 (11th Cir. 2012) (citing Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010)).

Ms. Neal established in her Complaint that she belongs to a protected class and, viewing the facts in the light most favorable to her, that Mr. Brown's conduct or comments were unwelcome, or at least irritating. Ms. Neal has not established, however, that his alleged conduct or comments — if harassment at all — were sufficiently severe or pervasive to alter the terms and conditions of her employment to a degree that Thomson should be held liable for Mr. Brown's actions. During the period in which Thomson

7

employed Ms. Neal as a temp — approximately one month — the extent of her complaints are that Mr. Brown "was getting fresh with [her]" and told her a story about another employee who was "mad [at him] because [he] won't f*** her." (DSMF ¶¶ 29, 31; Compl. at 5.) Mr. Brown also allegedly flirted with her and frequently came around her area of work. (DSMF ¶ 30.)

In measuring harassing conduct, the Supreme Court and Eleventh Circuit Court of Appeals have identified four probative factors: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is threatening or humiliating, or merely an offensive utterance, and (4) whether the conduct unreasonably interferes with work performance. Reeves, 594 F.3d at 808-09; Allen v. Tyson Foods, Inc., 121 F.3d 642, 647 (11th Cir. 1997). This "severe and pervasive" requirement contains both an objective and a subjective component. See Harris, 510 U.S. at 21-22. Thus, to be actionable, the behavior at issue must result in both an environment "that a reasonable person would find hostile or abusive" and an environment that the victim "subjectively perceive[s] . . . to be abusive." Id.

The Court cannot adjudge the frequency of any inappropriate conduct by Mr. Brown because Ms. Neal does not specify how many times she interacted with him on a daily basis or during any given week. Even after drawing all inferences in Ms. Neal's favor from her blanket assertion that Mr. Brown "always" stopped by her work area or "always" was "fresh" with her, the alleged harassment occurred for approximately one month. This is far shorter than the

three years of daily harassing conduct which the Eleventh Circuit found to be frequent in Reeves. See Reeves v. C.H. Robinson Worldwide, Inc., 525 F.3d 1139, 1146 (11th Cir. 2008), vacated on other grounds by 594 F.3d 798 (11th Cir. 2010). There is simply no indication that there were repeated incidents of verbal or physical harassment that continued *over Ms. Neal's objections* or that Mr. Brown's comments "permeated" the facility. Cf. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (finding sufficiently pervasive plaintiff's "unavoidabl[e] expos[ure]" to ethnic slurs by a shop foreman three to four times every day throughout a one month period); Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) (concluding that "roughly fifteen separate instances of harassment over the course of four months" was sufficiently frequent); see also Lauderdale v. Tex. Dep't of Criminal Justice Institutional Div., 512 F.3d 157, 164 (5th Cir. 2007) (concluding that ten to fifteen nightly phone calls for nearly four months from the plaintiff's supervisor amounted to pervasive harassment).

Moreover, Mr. Brown's specific remark about another co-worker and his own romantic prowess — while potentially offensive — appears to be offhand. The Supreme Court has refused to find such comments actionable. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); see also Reeves, 594 F.3d at 908 ("[G]eneral vulgarity or references to sex that are indiscriminate in nature will not, standing alone, generally be actionable. . . . Title VII does not prohibit profanity alone, however profane.")(internal

9

citations omitted). The Eleventh Circuit has likewise rejected claims based on behavior that is far more serious than the behavior alleged in this case. Mitchell v. Pope, 189 F. App'x 911, 913 (11th Cir. 2006) (per curiam) (rejecting the plaintiff's claim that sixteen specific instances of offensive conduct over four years constituted sexual harassment where the conduct at issue consisted primarily of "crass" and "juvenile" offensive utterances and on three occasions the defendant attempted to touch or actually touched the plaintiff); Mendoza v. Borden, Inc., 195 F.3d 1238, 1247-48 (11th Cir. 1999) (holding that an employer's conduct is not sufficiently severe or pervasive where the employer told the plaintiff "I'm getting fired up," rubbed against her, followed her around, and made sniffing noises while staring at her).

Finally, Ms. Neal has neither alleged nor put forth any evidence that she felt threatened or disturbed by Mr. Brown such that she avoided him or that Mr. Brown's attention interfered with her job performance. See Lockett v. Choice Hotels Int'l, Inc., 315 F. App'x 862, 863 (11th Cir. 2009) (finding defendant's alleged conduct - talk about sexual positions, explicit sexual acts, and gestures with his tongue - to be offensive, but that it "did not rise to the level of being severe, physically threatening, or humiliating")(internal quotation marks omitted); Tatt v. Atlanta Gas Light Co., 138 F. App'x 145, 148-49 (11th Cir. 2005) (holding that plaintiff failed to establish a good faith belief of sexual harassment when her supervisor feigned urination on paperwork once a week for two years because such conduct did not physically

threaten or humiliate plaintiff, the conduct did not interfere with her job performance, and plaintiff failed to report it until after she received a negative performance evaluation). Indeed, at no point did Ms. Neal tell anyone at Peoplelink that she did not want to return to Thomson as a temp or to work around Mr. Brown despite his alleged prior advances. (DSMF ¶ 37, Ex. B ("Pl.'s Dep.") at 62.) Ms. Neal therefore has failed to prove that Mr. Brown's conduct was ever anything more than professionally inappropriate, objectively or subjectively.

Summary judgment is also warranted based on the absence of employer liability in this case, which is the fifth and final requirement of a Title VII violation. Mr. Brown immediately moved to contact human resources after the incident with Ms. Neal. Mr. Collins – the company's Human Resources Manager - appropriately and promptly responded to the incident the next morning, which precludes Thomson's liability for Mr. Brown's actions. See Lockett, 315 F. App'x at 864. Having failed to prove multiple elements of her sexual harassment claim, the Court **GRANTS** Thomson's motion for summary judgment.

### B. Ms. Neal's Retaliation Claim

It is clear to the Court that Thomson sought to terminate its temporary employment relationship with Ms. Neal on account of her profane outburst while on the job, not because she made vague reports of inappropriate behavior by Mr. Brown only upon being sent home and ultimately terminated. To recover for unlawful

retaliation, Ms. Neal must prove that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997). In terms of causation, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action. Williams v. Ga. Stevedore Ass'n, Inc., No. CV 411-284, 2013 WL 1130741, at *6 (S.D. Ga. Mar. 18, 2013) (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)).

There is no question that Ms. Neal suffered an adverse employment action when Thomson requested that her placement as a temp be terminated. Assuming that either Ms. Neal's complaint (1) to Ms. Newsome that she "wouldn't fool around with [Mr. Brown]" after being told to go home on March 27, 2012, or (2) to Mr. Collins that "Stanley just mad because I wouldn't give him no attention, no play" during the investigatory interview on March 28, 2012 constitutes protected opposition activity, Ms. Neal nevertheless has failed to prove that these complaints ultimately caused her termination.

Prior to this altercation with Mr. Brown, Ms. Neal never complained about harassment to Thomson or Peoplelink. (DSMF ¶¶ 6-9.) Thus, in response to the altercation and Ms. Neal's very first complaints, Mr. Collins interviewed Ms. Neal and three witnesses within twenty-four hours. (Id. ¶¶ 23, 24, 29.) Mr. Collins engaged in further investigation of Mr. Brown, but could

12

not substantiate Ms. Neal's claims of sexually inappropriate behavior. (Id. ¶ 33.) As set forth in Thomson's uncontroverted Statement of Material Facts, the "decision to ask Peoplelink Solutions not to assign Ms. Neal to work assignments at Thomson Plastics was based entirely on her inappropriate outburst and use of profanity when asked by one of her supervisors to assist in a different area," not her recent protests against Mr. Brown's behavior. (Id. ¶¶ 34-36.)

Further, Ms. Neal did not make any complaints to Peoplelink about any harassment until *after* Thomson expressed its wish to wholly terminate its relationship with Ms. Neal. Here, any causal connection is temporally impossible, as the protected conduct must precede the reprisal. Consequently, Ms. Neal's retaliation claim fails and Thomson's motion for summary judgment is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant Thomson Plastics, Inc.'s Motion for Summary Judgment (Doc. 23) and Plaintiff Linda Michelle Neal's claims are **DISMISSED**. The Court **DIRECTS** the **CLERK** to **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of October, 2014.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

13